# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RYAN ALLEN,

                         Petitioner,     :       Case No. 3:25-cv-00354

    - vs -                           District Judge Walter H. Rice
                                    Magistrate Judge Michael R. Merz

WARDEN,
 Madison Correctional Institution,

                         Respondent.   :

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Ryan Allen under 28 U.S.C. § 2254, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 17), the Return of Writ (ECF No. 18), and Petitioner's Reply (ECF No. 23). With the Court's permission and the consent of Respondent, Petitioner has provided amendments to his Reply (ECF No. 27).

**Litigation History**

In Cases Numbered 22-CR-508 and 22-CR-680, a Clark County grand jury indicted Petitioner Allen on two counts of violating a protection order as prohibited by Ohio Revised Code § 2919.27 and 2919.27(A)(1) respectively. The cases were consolidated on Allen's motion and he

1

was convicted on both counts by a jury.  He was sentenced to five years community control on the following conditions:

> 1. Comply with all rules and regulations set forth by the Clark County Adult Probation Department;
>
> 2. Serve six (6) days in the Clark County Jail with credit from June 22, 2022, to June 27, 2022;
>
> 3. Maintain full-time employment, continue education, or engage in some combination thereof;
>
> 4. Engage in no contact, directly or indirectly, with the victim;
>
> 5. Abstain from posting anything on social media;
>
> 6. Abstain from communicating with any media:
>
> 7. Abstain from saying anything derogatory about the victim or Clark County Sheriff's Office (CCSO);
>
> 8. Comply in full with all child support orders; and
>
> 9. Pay court costs.

(Entry, State Court Record, ECF No. 17, Ex. 8, PageID 90).

Separately in Case No. 22-CR-547(A) the Clark County Grand Jury indicted Allen for violating a protection order in violation of Ohio Revised Code § 2919.27(A)(1).  He eventually pled no contest to this charge and was sentenced to community control with the same conditions as in the other two cases.

Allen appealed to the Ohio Court of Appeals for the Second District in Cases 22CR0508 and 22CR0680.  That court affirmed except for a remand to correct the overbreadth of certain community control conditions.  *State v. Allen*, 2023-Ohio-3655 (Ohio App. 2d Dist. Oct. 6, 2023)("*Allen I*"). The Ohio Supreme Court granted Allen a delayed appeal, but then declined to

2

exercise jurisdiction. *State v. Allen,* 174 Ohio St. 3d 1410 (2024). The trial court narrowed community control conditions 5-7 and Allen did not appeal. (Judgment Entries, State Court Record, ECF No. 17, Exs. 24-25).

On May 4, 2023, Clark County Adult Probation Officer Henry filed an Affidavit charging Allen with violating a community control condition as follows:

> On April 3, 2023 at 2:29 p.m.; During a Clark Co. Jail telephone conversation, the defendant was overheard encouraging his mother to contact the media or utilize social media when he made the following statement: "If anybody wants to start telling the story, they can. However, they want to tell it. If you catch my drift. I think a little public outcry might be a thing."

(Affidavit, State Court Record, ECF No. 17, Ex. 26). The trial judge found Allen had violated his community control conditions in all three cases and sentenced him to twelve months imprisonment on each count to run consecutively (Judgment, State Court Record, ECF No. 17, Ex. 37). On appeal the Second District remanded for a determination of whether Allen's conduct violated the narrowed conditions of community control it had previously ordered. *State v. Allen*, 2024-Ohio-2549 (Ohio App. 2d Dist. Jul. 3, 2024)("*Allen II*").

On remand the trial court found Allen had violated the narrowed conditions and imposed an additional condition of service of 432 days in jail (Judgment, State Court Record, ECF No. 17, Ex. 57). Allen appealed, but the Second District affirmed. *State v. Allen*, 2025-Ohio-1567 (Ohio App. 2d Dist. May 2, 2025)("*Allen III*"). The Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Allen*, 179 Ohio St. 3d 1492 (2025).

Allen filed a combined petition for post-conviction relief under Ohio Revised Code § 2953.21 in all three cases (Petition, State Court Record, ECF No. 17, Ex. 72). The trial court denied the petition, Allen appealed, and the Second District affirmed. *Id.* at Ex. 79. The trial court

3

also denied Allen's Motion to Vacate Conviction. *Id.* at Exs. 94 & 95.  The State Court Record does not show any subsequent history.

Allen filed his Petition in this Court on October 20, 2025, alleging his current incarceration violates the First Amendment as interpreted by the United States Supreme Court in *Counterman v. Colorado*, 600 U.S. 66 (2023).

Respondent relies on the invited error doctrine, noting that the protective order conditions of which Petitioner complains were agreed to by him when they were first imposed. Respondent also asserts Petitioner's claim is barred by procedural default as embodied in the doctrine of *res judicata*.

## Analysis

Petitioner's filings in this case eloquently defend a broad interpretation of the First Amendment.  He asserts that every speech act of his for which he is now being punished was speech in support of some public good:  reporting suspected child abuse, reporting possible corruption in the Clark County Sheriff's Office, reporting unlawful surveillance by his ex-wife's co-worker, and so forth.  He raises hypothetical cases in which he might need to contact the Sheriff's Office for reasons unrelated to his ex-wife:  summoning EMT services or stopping on police signal to accept a traffic ticket.

The privilege of speaking freely is, of course, a treasured American right, but whether its exercise is protected in particular circumstances may depend on context.  Crying "fire" in a crowded theater is laudable if the theater is on fire, but punishable for inducing panic if the cry is

false.  *Schenck v. United States*, 249 U.S. 47 (1919)(Holmes, J.).  In *Cohen v. California*, 403 U.S. 15 (1971), an important First Amendment case cited by Petitioner, the Supreme Court held, in an opinion by Justice Harlan,

> that conviction of defendant who walked through courthouse corridor wearing jacket bearing the words 'Fuck the Draft' in a place where women and children were present of breach of the peace under California statute prohibiting disturbance of the peace by offensive conduct could not be justified either upon theory that the quoted words were inherently likely to cause violent reaction or upon more general assertion that the states, acting as guardians of public morality, may properly remove such offensive word from the public vocabulary since the state may not, consistently with the First and Fourteenth Amendments, make the simple public display involved of the single four-letter expletive a criminal offense.

*Id.*  But vary the context only slightly.  Put the defendant inside the courtroom while court is in session, change the words from printed to spoken (or shouted), and the content from "Fuck the Draft" to "Fuck the Judge."  The undersigned has no doubt that conduct could be punished as direct criminal contempt of court with a committed jail sentence, whether or not the defendant had been previously ordered or had indeed agreed not so speak that way in open court.

A parallel example comes to mind from the undersigned's experience as a municipal judge in the 1970's.  Without doubt, freedom of bodily movement is also a valued privilege of citizens. It is so fundamental that it is not even mentioned in the Bill of Rights.  During the undersigned's tenure as a  municipal judge, there were a significant number of prosecutions in Dayton, Ohio, for prostitution-related offenses.  It was my practice to impose as a bond or probation condition after conviction that the defendant not be within a six-block radius of a particular intersection between 6:00 p.m. and 6:00 a.m.   This interfered with a well-recognized liberty interest that is constitutionally protected – freedom of movement -- but it did so in a way narrowly tailored to

prevent recidivism.  A committed sentence would have interfered much more grievously with a defendant's freedom of movement, but a committed sentence of up to sixty days was authorized for these offenses.  As far as the undersigned is aware, no one has ever successfully challenged a sixty-day committed sentence in a prostitution case as cruel and unusual punishment.

What, then, is the context of Petitioner's convictions?  Petitioner was married to his ex-wife whose name has been redacted from records filed with this Court.  A daughter was born of that marriage and the couple later divorced.  As part of the divorce decree or in a later child custody proceeding, Petitioner agreed to a protection order which the Second District described as follows:

> {¶ 5} The two protection-order violations at issue occurred in the context of child-custody proceedings involving Allen and his ex-wife, a deputy with the Clark County sheriff's office. In relevant part, the protection order prohibited appellant Allen from initiating or having any contact with his ex-wife or her employer. The order defined "contact" to include communication by telephone, text messaging, email, voice mail, and other forms of communication. The order prohibited Allen from engaging in such contact directly or through another person, even with his ex-wife's permission. Allen consented to the terms of the order and signed it.

*Allen I.*

This order, as Petitioner points out, on its face interferes with his speech.  In the absence of the protection order, Allen would be free to contact his ex-wife or the Clark County Sheriff's office for any good reason or for no reason at all.  Of course, in the absence of the order, Allen could be prosecuted for any criminal conduct which used speech as a means of committing the offense, for example, extortion or bribery.  The protection order sets the context for the case.  Discussion of broad First Amendment principles cannot substitute for applying those principles in context.

**Invited Error**

To the extent there is error in the protection order as originally entered, Respondent argues

Petitioner invited that error by consenting to the order.

Under the invited error doctrine, a party cannot take advantage of an error he invited or

induced. *State v. Seiber*, 56 Ohio St. 3d 4, 17 (1990); *accord State v. Murphy*, 91 Ohio St. 3d 516,

535 (2001); *State v. Cassano*, 96 Ohio St. 3d 94, 105 (2002). A party cannot obtain federal habeas

corpus relief from invited error. *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002); *Fields*

*v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001).

> "The doctrine of 'invited error' refers to the principle that a party
> may not complain on appeal of errors that he himself invited or
> provoked the court . . . to commit." *Harvis v. Roadway Express Inc.*,
> 923 F.2d 59, 60-61 (6th Cir. 1991). This circuit has referred to the
> doctrine as "a cardinal rule of appellate review," and federal
> appellate courts have applied the doctrine to a "wide range of
> conduct." *Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 249 (6th
> Cir. 1991) (quoting *Harvis*, 923 F.2d at 60) (internal quotation
> marks omitted)).

*Bavelis v. Doukas (In re Bavelis),* 773 F.3d 148, 157 (6th Cir. 2014).

Petitioner does not disclaim his consent to the protection order or contest the jury findings

that his conduct violated the order. Instead, he makes two responses. First of all he claims that

these protection orders are mostly boilerplate:

> For all intents and purposes when no acts or threats of violence have
> occurred, these orders are strictly used to prevent the possibility of
> violence or threats; including potential acts of harassment. In Ohio
> the forms used to implement such an order are mostly boilerplate
> and have very little movement within its cookie-cutter stipulations.

(Amended Traverse, ECF No. 27, PageID 1750). Who says? Petitioner, whose writing evinces

access to legal research materials, offers no proof of this assertion. And of course the fact that a

document is mostly "boilerplate" does not change its effectiveness. From experience, the

7

undersigned knows that most jury verdict forms or criminal judgment entries are constructed from form documents aka "boilerplate".

Secondly, Petitioner argues "An underpinning principle to consider is that substantive rights cannot be waived by contract." Again, Petitioner offers no supporting authority. Customers of large manufacturers would be interested to know that their agreement by adhesion contract[1] to arbitrate warranty disputes in lieu of suing is invalid. More to the point, a plea of guilty in a criminal case waives the substantive right to personal freedom up to the maximum sentence agreed to in the plea bargain.

More importantly, the protection order is not just a contract. Rather it is an order of a domestic relations court which had both personal and subject matter jurisdiction over Petitioner. It is similar in structure to an order of this Court adopting a settlement agreement of a case. Petitioner does not assert that he has ever returned to the issuing court to attempt to obtain a modification of the protection order.

**Procedural Default – *Res Judicata***

Respondent also asserts Petitioner's claim is procedurally defaulted by his failure to raise it at the appropriate time in the state court proceedings.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

---

[1] An adhesion contract is one which is attached to another contract and usually accepted as a matter of course in buying the other product. Such "terms and conditions" are usually drafted by corporate counsel and must be accepted if one purchases the product.

Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio law has a relevant procedural rule:  Issues that could have been raised on direct appeal and were not are *res judicata* and not subject to review in subsequent proceedings. *State v. Davis*, 119 Ohio St.3d 422, ¶ 6 (2008). citing *State v. Hutton,* 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 37; *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 143, 652 N.E.2d 710 (1995).

The Second District enforced this rule against Petitioner when it held that his challenge to the terms of the protection order were barred by *res judicata*.

> {¶ 24} The State responds that Allen did not appeal the judgment entry imposing the narrowed community control sanctions and therefore is now precluded from challenging the sanctions imposed on grounds of res judicata.
>
> {¶ 25} In response, Allen contends that res judicata does not preclude his challenge because he raises an as-applied constitutional

9

challenge to his community control sanctions. Allen argues that he could not have raised a constitutional as-applied challenge until the facts at issue were found to be a violation of his community control sanctions. We do not agree.

{¶ 26} Because Allen failed to challenge the constitutionality of his community control sanctions in a direct appeal from the imposition of those sanctions, he is precluded from raising them now. Following this court's remand in *Allen I*, the trial court imposed narrowed community control sanctions on February 20, 2024. Allen did not appeal from the trial court's February 20, 2024 judgment, which was immediately appealable with respect to the terms and conditions of his community control sanctions. *See State v. Kelly*, 2005-Ohio-3178, ¶ 21 (2d Dist.). "Res judicata bars [a defendant] from raising an issue on appeal from the revocation of his community control sanctions which could have and should have been raised on direct appeal from the judgment of conviction in which community control was first imposed." *State v. Cooper*, 2019-Ohio-3919, ¶ 22 (2d Dist.), citing *State v. Turner*, 2017-Ohio-4101, ¶ 8 (2d Dist.). Unlike Allen's current procedural posture, the cases upon which he relies were direct appeals from the trial court's imposition of certain conditions. *Jones*, 49 Ohio St.3d 51 (challenging imposition of condition of probation on direct appeal of sentence); *Bey v. Rasawehr*, 2020-Ohio-3301 (challenging on direct appeal the constitutionality of a condition imposed in a civil-stalking protection order). Because Allen could have challenged the constitutionality of his narrowed community control sanctions on direct appeal from the trial court's February 20, 2024 imposition of his narrowed sanctions, but chose not to do so, res judicata bars him from raising such issues on appeal from the judgment finding him in violation of his narrowed community control sanctions. *See State v. Eastman*, 2021-Ohio-392, ¶ 9 (2d Dist.).

*State v. Allen*, 2025-Ohio-1567 (Ohio App. 2d Dist. May 5, 2025)(*Allen III*), app. juris. declined, *State v. Allen*, 179 Ohio St.3d 1492 (2025).

Finally, the Sixth Circuit has consistently held the Ohio's *res judicata* doctrine is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th

Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Petitioner argues that *res judicata* may be overcome when it contravenes public policy, but he cites *Bronson v. Board of Ed. of City School Dist. Of Cincinnati,* 525 F.2d 344 (6th Cir. Sept. 24, 1975), where the Sixth Circuit upheld application of *res judicata* and the parallel doctrine of collateral estoppel as applied to Cincinnati school desegregation.  Language recognizing possible exceptions to *res judicata* in that case are therefore dictum.  Moreover, *Bronson* concerns application of *res judicata* within the federal system (i.e., as between different federal cases), whereas in this case we are concerned with recognizing *res judicata* as an independent and adequate ground of the state court's decision.

Petitioner next argues that the change in the law represented by *Counterman v. Colorado*, 600 U.S. 66 (2023), makes *res judicata* inapplicable. The Supreme Court decided that case on June 27, 2023.  Thus it was available to Petitioner to argue when he briefed the appeal that resulted in *Allen III*, but he did not do so. (See Appellant's Brief, State Court Record, ECF No. 17, Ex. 91, which contains no citation to *Counterman*).  To put it simply, in order to avoid the application of *res judicata* on the basis of *Counterman*, Allen had to at least ask the Second District to consider *Counterman* as a relevant change in the law so as to avoid *res judicata* and he did not do so.  The application of Ohio *res judicata* law to Petitioner's failure to challenge the conditions of community control on direct appeal is now itself decided law.  As a matter of comity with the Ohio courts, this court cannot retroactively require the Ohio courts to recognize *Counterman* as creating an exception to Ohio *res judicata* doctrine.

**Selective Prosecution**

In his original Traverse, Petitioner claims he is the victim of selective prosecution in that he initiated many email communications with the Clark County Sheriff, but the prosecutor chose to prosecute only two of them (Reply, ECF No. 23, PageID 1726).  This claim is not pleaded in the Petition, which raises only a First Amendment claim. Moreover, it does not state a claim for relief cognizable in habeas corpus.  The Fourteenth Amendment Equal Protection Clause forbids choosing persons to prosecute on the basis of race, gender, ethnic background, etc.  In order to prove even a prima facie case of racially selective prosecution, a defendant must show "that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong,* 517 U.S. 456 (1996), citing *Ah Sin v. Wittman*, 198 U.S. 500 (1905).  Selective prosecution claims are appropriately judged by ordinary equal protection standards. *Cornwell v. Bradshaw*, 559 F. 3d 398 (6th Cir. 2009), citing *Wayte v. United States,* 470 U.S. 598, 608 (1985).

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished.  The law does not need to be enforced everywhere to be legitimately enforced somewhere, and prosecutors have broad discretion in deciding whom to prosecute.

*Futernick v. Sumpter Township*, 78 F.3d 1051 (6th Cir., 1996), citing *Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 1530, 84 L. Ed. 2d 547 (1985)(choice to prosecute only those non-registrants for Selective Service who inform the government of their intention not to register).

In other words, the evil of selective prosecution consists in choosing one defendant over another on an invidious basis.  No constitutional principle requires a prosecutor to indict on all available offenses against one defendant.

12

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 8, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

13